IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CURTIS BORCHARDT, ) | | |
| Derivatively on Behalf of Nominal ) | | |
| Defendant BB&T CORPORATION, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | 1:10CV261 |
| ) | | |
| KELLY S. KING, CHRISTOPHER ) | | |
| L. HENSON, DARYL N. BIBLE, ) | | |
| BARBARA F. DUCK, CLARKE R. ) | | |
| STARNES, EDWARD D. VEST, ) | | |
| JOHN A. ALLISON, JENNIFER S. ) | | |
| BANNER, ANNA R. CABLIK, ) | | |
| NELLE RATRIE CHILTON, ) | | |
| RONALD E. DEAL, TOM D. EFIRD, ) | | |
| BARRY FITZPATRICK, ) | | |
| J. LITTLETON GLOVER, ) | | |
| VINCENT L. HACKLEY, JANE P. ) | | |
| HELM, JOHN P. HOWE, III, ) | | |
| JAMES H. MAYNARD, ALBERT O. ) | | |
| MCCAULEY, J. HOLMES ) | | |
| MORRISON, NIDO R. QUBEIN, ) | | |
| TOM SKAINS, TOMMY THOMPSON, ) | | |
| STEPHEN WILLIAMS, and ) | | |
| E. RHONE SASSER, ) | | |
| ) | | |
| Defendants, ) | | |
| ) | | |
| and ) | | |
| ) | | |
| BB&T CORPORATION, ) | | |
| ) | | |
| Nominal Defendant. ) | | |

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on the motion to dismiss filed by Nominal Defendant BB&T Corporation. (Docket No. 24.) Plaintiff is a shareholder of Nominal Defendant BB&T who brings this shareholder derivative action alleging that Defendants breached their fiduciary duties by causing or allowing employees of BB&T and its subsidiary Scott & Stringfellow, Inc. ("Scott & Stringfellow") to make false statements to customers and omit material information in connection with the sale of Auction Rate Securities ("ARS"). (Docket No. 32 at 6.) Nominal Defendant BB&T moves to dismiss based on North Carolina law which requires dismissal of a shareholder derivative action if certain steps are taken by the corporation's board of directors and the board finds that maintenance of the derivative action is not in the best interest of the corporation. *See* N.C. Gen. Stat. § 55-7-44(a); Docket No. 25.

For the reasons that follow, this Court recommends that Defendant BB&T's motion to dismiss be granted and that this action be dismissed.

## FACTS, CLAIMS, AND PROCEDURAL HISTORY

This action has its origin in another action filed in the United States District Court for the District of New Jersey. *See Dow Corning Corp. v. BB&T Corp.*, No. 09-5637, 2010 U.S. Dist. LEXIS 124031 (D.N.J. Nov. 23, 2010) (order granting in part and denying in part Defendants' motion to dismiss). In that action, Plaintiffs Dow Corning and Hemlock

Semiconductor Corporation allege that BB&T and Scott & Stringfellow, LLC, induced them to invest in ARS's through material misrepresentations and omissions concerning the ARS market. *Id*. The ARS market collapsed in late 2007 or early 2008, and plaintiffs became unable to sell their ARS holdings. *Id*. At that time, plaintiffs allegedly held approximately $641,800,000 of ARS. *Id*. That amount has now been reduced to approximately $400 million because some ARS issuers have redeemed the securities. *Id*. All claims against BB&T have now been dismissed without prejudice by the New Jersey court because the plaintiffs failed to state a claim upon which relief could be granted. *Id*. The action continues against Scott & Stringfellow. *Id*.

Plaintiff Borchardt alleges in the present action that the individual Defendants breached their fiduciary duties and subjected BB&T to damages including "costs and expenses incurred in connection with [the New Jersey action,] as well as further investigation of the unethical and illicit activities." (Docket No. 1 at 3.) The individual Defendants are current and former BB&T officers and directors. (*Id*. at 4-8.)

On December 11, 2009, Plaintiff made a demand on the BB&T board of directors, as required by North Carolina law, to "take action to remedy breaches of fiduciary duties by the directors and certain executive officers of the Company." (Docket No. 1, Ex. A at 1.) On February 18, 2010, the BB&T board through General Counsel Frances B. Jones advised Plaintiff's counsel that the board had determined that taking the requested action would not

be in the best interests of the corporation or its shareholders. (*Id*., Ex. B.) Plaintiff then filed this derivative action.

On April 27, 2010, the BB&T board of directors formed a "Special Committee" to investigate and evaluate Plaintiff's derivative claim. (Docket No. 26 ("Second Declaration of Thomas Skains") ¶ 3.) The Special Committee consisted of three current BB&T directors: Thomas Skains, J. Littleton Glover Jr., and K. David Boyer Jr. (*Id*.) On May 11, 2010, the Special Committee retained the Brooks Pierce McLendon Humphrey & Leonard law firm (Brooks Pierce) to serve as independent legal counsel and to assist in the investigation of Plaintiff's allegations. (*Id*. ¶ 6.) The Special Committee received periodic updates from Brooks Pierce during the course of the investigation. (*Id*. ¶ 8.) On October 13, 2010, Brooks Pierce provided its final findings and recommendations to the Special Committee. (*Id*. ¶ 9.) Brooks Pierce did not find any evidence of a breach of fiduciary duty as alleged by Plaintiff. (Docket No. 26, Ex. 2 at 22.) It recommended that the BB&T board not file any action against the individual Defendants. (*Id*. at 23.)

The Special Committee found no evidence of any misrepresentations made by anyone at BB&T or Scott & Stringfellow, that Dow Corning was a sophisticated investor who understood the risks of ARS, and that there was no basis to overturn the decision to defend the Dow Corning lawsuit. (Second Skains Decl. ¶ 10.) The Committee also found that BB&T could not and did not cause the ARS market to collapse, that the individual Defendants had no involvement with or knowledge of any brokers' interactions with ARS

customers, and that Plaintiff's lawsuit was unlikely to result in any recovery for BB&T. (*Id.*) Finally, the Committee found that Plaintiff's lawsuit would be a distraction to the management and employees of BB&T, result in substantial expense to BB&T, make it difficult for BB&T to attract and retain top talent management and directors, and that maintenance of the suit was not in the best interest of BB&T or its shareholders. (*Id.*)

The three members of the Special Committee submitted declarations in which each avers that he had no business or personal relationship with any Defendant in this action. (*Id.* ¶ 11; Docket Nos. 27, 28.) Each also avers that other than owning shares of BB&T, he had no other business relationship with the company other than normal banking services. (*Id.*) Mr. Glover states that he is an officer of two companies which provide services to BB&T in the normal course of business, but he is not involved in any of those negotiations or transactions. (Docket No. 27 ¶ 6.) Also, Mr. Skains states that he is President and CEO of Piedmont Natural Gas Company and that Piedmont and BB&T provide services to each other in the ordinary course of business. (Second Skains Decl. ¶ 11.)

## DISCUSSION

**A.     Standard**

North Carolina has adopted a statutory framework for evaluating a shareholder derivative complaint. Nominal Defendant BB&T is moving to dismiss pursuant to the provision which states that the court "shall dismiss" a derivative proceeding on the motion of the corporation if a committee of independent directors determines "in good faith after

conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the derivative proceeding is not in the best interest of the corporation." N.C. Gen. Stat. § 55-7-44(a) (1995).

**B.      Independent directors**

The first inquiry under the statutory framework is whether the Special Committee was composed of "independent directors" which is required by N.C. Gen. Stat. § 55-7-44(b)(2). *See Madvig v. Gaither*, 461 F. Supp. 2d 398, 404 (W.D.N.C. 2006). Plaintiff does not specifically argue that the three directors of the Special Committee were not "independent." Plaintiff contends that because the "independent" directors comprising the Special Committee "are three of the very same board members who already considered and rejected the Demand," the Committee "can never be a proper committee as it had already pre-determined that" maintenance of the derivative proceeding is not in the best interest of the corporation and can never perform a "good faith" investigation as required by statute. (Docket No. 32 at 16-17.) Indeed, Defendant further argues that "any consideration of [the three directors'] independence at the time of the formation of the improper 'Special Committee' is irrelevant because they are the very same board members who considered and

rejected the Demand."[1] (*Id*. at 17.)

"A director is determined to be independent where he or she is capable of making a decision in the corporation's interest, rather than some other interest, such as their own personal interests." *Madvig*, 461 F. Supp. 2d at 404. Plaintiff does not argue that any of the three directors making up the Special Committee has any personal interest which might prevent him from making a decision in the corporation's interest. Importantly, one factor which by statute does *not* cause a director to be not independent is the "approval by the director of the act being challenged in the derivative proceeding or demand if the act resulted in no personal benefit to the director." N.C. Gen. Stat. § 55-7-44(c)(3). Plaintiff has not alleged that any director benefitted personally from the act being challenged. Reasoning from subsection (c)(3), the fact that a director voted to reject Plaintiff's written demand to

---

[1] The one case cited by Plaintiff in connection with his argument that the Special Committee members were tainted as result of their prior denial of his demand letter is *Biondi v. Scrushy*, 820 A.2d 1148 (Del. Ch. 2003). The quotation from that case relied upon by Plaintiff shows that the case is not comparable to the present action. (Docket No. 32 at 17.) The *Biondi* court listed desired qualities of a directors' special committee such as the lack of compromising ties to the key officials suspected of malfeasance, full empowerment by the board of the special committee to act for the company, and committee behavior consistent with a duty to carefully and open-mindedly investigate the alleged wrongdoing. *Biondi*, 820 A.2d at 1156. The Special Committee at issue in the present action exhibited these qualities. (*See* Docket No. 26, Ex. 1 (Resolution of Board establishing Special Committee) (granting Committee "full plenary power in the exercise of its full discretion and independent judgment" to, among other things, conduct an investigation and "determine in its independent judgment the best interests of the shareholders of the Company and what, if any, action, claim or demand shall be made" against any person or whether legal action should be initiated or maintained against any person).)

bring suit based on the act being challenged in the demand also should not disqualify the director. The declaration of each of the Special Committee directors convinces the Court that he was capable of making a decision in the corporation's interest and that he met the statutory requirement of being an "independent director."

C.  **Reasonable inquiry**

The independent directors must make a "reasonable inquiry" pursuant to statute and base their decision upon that inquiry. N.C. Gen. Stat. § 55-7-44(a). Plaintiff argues that because of the decision made by the Special Committee members pursuant to his earlier demand, they could not have made a "'good faith' investigation" after he filed this derivative proceeding. (Docket No. 32 at 18.) The statute requires a "reasonable inquiry" and a "good faith" determination, rather than a "good faith investigation."

Plaintiff does not explain why the earlier decision to reject his demand would prevent the directors of the Special Committee from making a reasonable inquiry once the derivative proceeding was filed. A reasonable inquiry is one that is "commensurate in scope with the nature of the issues raised by the complainant." *Madvig*, 461 F. Supp. 2d at 407. The Court finds that the investigation of the Special Committee through counsel was reasonable. According to Counsel's report, Counsel interviewed all 25 individual Defendants as well as 13 officers and employees of BB&T and Scott & Stringfellow, and reviewed thousands of pages of documents and a database of 87,000 emails. (Docket No. 26, Ex. 2 at 7.) The report of Counsel is lengthy and detailed. (*Id*., Ex. 2.) The Special Committee explained its

-8-

decision based upon Counsel's inquiry. (*Id*., Ex. 3.) Therefore, this Court finds that the Special Committee satisfied the "reasonable inquiry" element pursuant to statute.

**D.     Good faith**

The final inquiry asks whether the Special Committee acted in good faith. N.C. Gen. Stat. § 55-7-44(a). In this context, good faith is defined as a decision that is made honestly, conscientiously, fairly, and with undivided loyalty to the corporation. *Madvig*, 461 F. Supp. 2d at 408. Directors on a special committee act in bad faith when their investigation is so restricted in scope and execution or otherwise half-hearted as to constitute a pretext or sham. *Id*. at 409.

Again, Plaintiff's sole argument as to good faith is that the Special Committee members could not have acted with good faith due to their prior vote to reject his demand. (Docket No. 32 at 17-18.) Plaintiff makes no specific argument that their investigation was deficient to the extent that it could be considered to be a sham. Based upon the undisputed record, the Court finds that the Special Committee members made their decision in good faith.

**E.     Discovery**

Plaintiff argues that if the Court considers the propriety of the Special Committee's inquiry, he is entitled to discovery pursuant to N.C. Gen. Stat. § 55-7-44(d). (Docket No. 32 at 18.) Section 44(d) provides that prior to a court's ruling on a motion to dismiss, "the plaintiff shall be entitled to discovery only with respect to the issues presented by the motion

and only if and to the extent that the plaintiff has alleged such facts with particularity." N.C. Gen. Stat. § 55-7-44(d). The "facts" referred to are those "establishing that the requirements of subsection (a) of this section have not been met." (*Id.*) Therefore, before discovery is allowed pursuant to this subsection, Plaintiff must allege facts with particularity establishing that the directors are not independent, that the inquiry was not reasonable, or that the directors' decision was not made in good faith.

Plaintiff does not acknowledge this burden and has failed to allege with particularity such facts. The only fact alleged by Plaintiff regarding these subjects is that the three directors of the Special Committee were on BB&T's board of directors when the board denied his pre-litigation demand. There is no dispute as to that fact. Beyond that, Plaintiff simply argues that he is entitled to discovery and that he "would be hard pressed to dispute any of the assertions of BB&T regarding the 'Special Committee's' adherence to the requirements of N.C. Gen. Stat. § 55-7-44." (Docket No. 32 at 23.) Plaintiff has failed to make the threshold showing required by section 44(d).

Because North Carolina law controls this question, cases from other jurisdictions are not persuasive as to the standard that should be utilized to determine if Plaintiff is entitled to discovery. The Court finds, upon application of North Carolina law that, under the circumstances of this case, Plaintiff is not entitled to discovery prior to the Court's consideration of Defendant's motion to dismiss.

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Nominal Defendant BB&T's motion to dismiss (Docket No. 24) be granted and that this action be dismissed with prejudice.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: May 4, 2011