IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


CURTIS BORCHARDT,                    )
Derivatively on Behalf of            )
Nominal Defendant BB&T               )
CORPORATION,                         )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )          1:10CV261
                                     )
KELLY S. KING, et al.,               )
                                     )
          Defendants,                )
                                     )
     and                             )
                                     )
BB&T CORPORATION,                    )
                                     )
          Nominal Defendant.         )


## ORDER

     Plaintiff Curtis Borchardt has moved this court for an order

compelling BB&T Corporation ("BB&T") and the Special Investigation

Committee ("SIC") of BB&T Corporation's board of directors to

produce: (1) all witness interview notes taken by SIC counsel; (2)

all written communications between SIC counsel and witnesses; (3)

all drafts of the declarations of the SIC's members and

communications with respect thereto; and (4) copies of 3,000 plus

pages of documents that BB&T made available for inspection, but not

copying. (See Docs. 59, 60.) BB&T and SIC object to the production

of the requested documents on several grounds. (See Docs. 61, 63.)

This court finds that Plaintiff's requests for discovery are in part overly broad, as Plaintiff focuses on all potential information relevant to the case rather than that which was considered and relied upon by the SIC. For that reason and the reasons that follow, the motion will be granted in part and denied in part.

The relevant facts and procedural history are only summarized in this Order, as they have been extensively addressed previously in a part of the Recommendation of United States Magistrate Judge that is largely undisputed (see Doc. 35 at 2-4) and in this court's prior order (Doc. 46).

After this court stayed action on BB&T's motion to dismiss and ordered discovery on the issues specified in N.C. Gen. Stat. § 55-7-44(a), the parties presented a Joint Proposed Discovery Plan (Doc. 48). The parties proposed discovery on the relevant issues, including whether the Special Committee's investigation was reasonable and whether the Special Committee's determination was made in good faith. (See Joint Proposed Disc. Plan (Doc. 48) at 1.)[1] Defendants agreed to produce non-privileged documents as outlined in the discovery plan. In that order, Plaintiff stated his intention

---

[1]   All citations in this Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 2 -

to seek items that may be privileged. Those items included transcripts, notes and summaries of witness interviews conducted by the SIC and/or its counsel, drafts of SIC counsel's report circulated between or among SIC members, drafts of the declarations of SIC members, and drafts of the minutes of board and SIC meetings. (Id. at 3-4.)

In response to the discovery conducted, Defendant BB&T has refused to permit copying of documents reviewed only by SIC counsel. Instead, while providing copies of a substantial number of documents, BB&T has agreed to make some 3,000 plus pages of documents available for inspection, but not copying, by Plaintiff's counsel. (Mem. of Law in Supp. of Pl.'s Mot. to Compel ("Pl.'s Mem.") (Doc. 60) at 21-22.) Plaintiff objects to this limitation on production. BB&T responds that these documents are not relevant and constitute sensitive business information. (BB&T's Mem. in Opp'n to Pl.'s Mot. to Compel ("BB&T's Mem.") (Doc. 61) at 8-9.)

BB&T has also refused to provide drafts of the declarations of Director Thomas Skains and emails between outside counsel and Director J. Littleton Glover, all of which BB&T contends are protected by attorney-client and work-product privileges. (Id. at 4-7.)

Plaintiff also contends that SIC counsel has refused to provide notes and/or summaries of witness interviews and communications between SIC counsel and witnesses regarding the substance of the investigation. (Pl.'s Mem. (Doc. 60) at 17-20.) At a hearing held in this case, Plaintiff clarified that the only witnesses for whom no summaries have been provided are the directors named as defendants in this lawsuit. The SIC contends these documents are privileged, either as attorney-client or work-product documents.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." See also Elkins v. Broome, No. 1:02CV305, 2004 WL 3249257, at *2 (M.D.N.C. Jan. 12, 2004) (unpublished) ("[R]elevancy at discovery is a far different matter from relevancy at trial. At discovery, relevancy is more properly considered synonymous with 'germane,' as opposed to competency or admissibility.").

Where, as in this case, a corporation moves to dismiss a derivative proceeding pursuant to N.C. Gen. Stat. § 55-7-44(a), the court must resolve three issues. Those three issues are whether the individuals comprising the SIC are independent, whether their

- 4 -

determination was made in good faith, and whether the inquiry was reasonable. The parties have not cited, nor has this court found, any North Carolina or Fourth Circuit case construing the appropriate parameters of discovery in the context of a motion raising the issues set forth in N.C. Gen. Stat. § 55-7-44(a).

There are cases from other jurisdictions that address discovery pursuant to the relevant issues of the good faith and reasonableness of a special committee investigation under similar statutes and therefore provide guidance to this court. The case of <u>Zapata Corp. v. Maldonado</u>, 430 A.2d 779 (Del. 1981), is one of the most frequently cited cases addressing these discovery issues. The <u>Zapata</u> court recognized, under Delaware law, that "when a special litigation committee conducts an investigation for a Delaware corporation, derivative plaintiffs are normally permitted 'limited discovery' to explore the independence and good faith of the committee's members, and the reasonableness of the committee's investigation." <u>In re Take-Two Interactive Software, Inc. Derivative Litig.</u>, No. 06 Civ. 5279(LTS)(DFE), 2008 WL 681456, at *2 (S.D.N.Y. Mar. 10, 2008) (unpublished) (quoting <u>Zapata</u>, 430 A.2d at 788); <u>see also</u> <u>Zapata</u>, 430 A.2d at 788 ("First, the Court should inquire into the independence and good faith of the committee and the bases supporting

- 5 -

its conclusions.  Limited discovery may be ordered to facilitate such inquiries.").

Plaintiff has not filed his specific discovery requests in support of his motion to compel.[2]  Instead, Plaintiff argues that he "must be given access to all of the documents and information utilized or relied upon by the SIC and its counsel in rendering its decision that this litigation should not proceed."  (Pl.'s Mem. (Doc. 60) at 14.)  Even though "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted," Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003), this court does not agree that, as a general proposition, a derivative plaintiff is entitled to all documents relied upon by SIC counsel.

In support of his contention, Plaintiff cites the cases of Abbey v. Computer & Commc'ns Tech. Corp., CIVIL ACTION No. 6941, 1983 WL 18005 (Del. Ch. Apr. 13, 1983) (unpublished); Joy v. North, 692 F.2d 880 (2d Cir. 1982); Zitin v. Turley, No. CIV 89-2061-PHX-CAM, 1991 WL 283814 (D. Ariz. June 20, 1991) (unpublished); and Sutherland v. Sutherland, No. Civ.A. 2399-VCL, 2007 WL 1954444 (Del. Ch. July 2, 2007) (unpublished).  This court finds that none of the cases cited

---

[2] At a hearing on this motion, the parties appeared to agree that Plaintiff's discovery requests were broad enough to encompass requests for statements made by the defendant directors.

- 6 -

requires, as a general proposition, the disclosure of all information reviewed by SIC counsel.  Plaintiff's arguments conflate the issue of the reasonableness of the SIC's determination, based on information provided to and reviewed by the SIC, with any and all investigation and review conducted by SIC counsel.

Furthermore, N.C. Gen. Stat. § 55-7-49 provides that "[i]n any derivative proceeding, no shareholder shall be entitled to obtain or have access to any communication within the scope of the corporation's attorney-client privilege that could not be obtained by or would not be accessible to a party in an action other than on behalf of the corporation."  This court construes that language to mean that the filing of a derivative action by a shareholder does not, as a matter of course, entitle that shareholder to review all attorney-client communications.

This court finds the case of <u>Klein v. FPL Group, Inc.</u>, No. 02-20170-CIV, 2003 WL 22768424 (S.D. Fla. Sept. 26, 2003), persuasive in determining the appropriate scope of discovery at this stage of these proceedings.  In <u>Klein</u>, the district court determined the scope of discovery permitted under a Florida statutory scheme similar to that of the North Carolina statute at issue in this case. That court held:

> In addition to the issues of the independence and good
> faith of the board members who made the decision to file

- 7 -

the Motion to Dismiss, the discovery needs to be broad
enough to enable the Court to determine whether the
decision was based on a "reasonable investigation." That
determination necessarily implicates the merits of the
controversy to at least a limited extent. In order for
the Court to determine whether the investigation was
conducted in good faith and was reasonable, the Court needs
to know what was done, and what information was considered
by the decisionmakers. However, full-blown discovery on
the merits of the controversy is not required; even under
the most expansive view of discovery espoused in Zapata,
the Court referred to the "limited discovery" which would
be permitted.

Id. at *8. The Klein court concluded that "discovery should be
limited at this stage of the proceedings to the matters upon which
the decision-makers relied, but that discovery should be permitted
to test the reasonableness of the investigation undertaken." Id.
at *9. This court agrees with the Klein court's description of the
permissible scope of discovery at this stage of the proceedings, as
that analysis strikes an appropriate balance between the
corporation's right to preliminary consideration of a motion to
dismiss and the derivative plaintiff's right to investigate and
respond to the corporation's procedures and conclusions.

This court concludes that, for purposes of relevant discovery
at this stage of the proceedings, relevant matters include all facts
or information either contained in the report or relied upon by the
SIC and, relatedly, whether the SIC's reliance upon counsel's
representations as to those facts was reasonable. Under that

- 8 -

standard, both the facts as contained in the report and counsel's actions in preparing and submitting the facts contained in the report, would be proper subjects of discovery.

## Copying of Unredacted Documents Including Meeting Minutes

Turning first to Plaintiff's claim that he is entitled to copy the 3,000 pages or so of the records that BB&T has made available for inspection but not copying, BB&T responds that these documents "were among the documents that the Special Committee's counsel reviewed in connection with the investigation. In reviewing these documents, the Special Committee's counsel found absolutely nothing relevant to plaintiff's shareholder derivative claims." (BB&T's Mem." (Doc. 61) at 8.) Thus, it appears these records are not discoverable, as Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). It appears BB&T's representation that these records are not discoverable has merit, as the records were not provided to the SIC nor were they relied upon by SIC counsel in preparing the report.

Although Plaintiff has been provided redacted copies of some of these documents and the opportunity to inspect, but not copy, unredacted versions of all the documents (BB&T Mem. (Doc. 61) at 8-9), Plaintiff has not presented any argument or basis upon which this

- 9 -

court could find that the documents are relevant or discoverable. The fact that SIC counsel may have looked at the documents is an insufficient basis upon which to determine that the documents are relevant and must be provided to Plaintiff in discovery, much less that they must be copied and provided in their unredacted form.

Although Defendants have made a sufficient showing that further discovery is not required, this court notes that BB&T's responsive brief is woefully lacking in persuasiveness as to its "sensitive and confidential business information" argument. (See id. at 8.) BB&T has offered nothing more than the conclusory statement that "BB&T is a public company that is fully subject to the federal securities laws." (Id.) If non-disclosure were based solely upon this argument, this court would overrule BB&T's objection.

**Witness Interview Notes Prepared by SIC Counsel**

Plaintiff contends that he is entitled to discover SIC counsel's witness interview notes. As noted earlier, it appears that only notes or summaries of the interviews of the directors named as defendants have not been provided in discovery.[3] In support of this argument, Plaintiff contends that counsel's report to the SIC "is replete with references to statements by undisclosed witnesses

---

[3] This court finds no basis upon which to require SIC counsel to provide their notes of interviews for instances in which an interview summary has been provided during this discovery.

interviewed in connection with the SIC's investigation." (Pl.'s Mem. (Doc. 60) at 17.) SIC counsel responds that it has furnished "[a]ll interview memos prepared by Brooks Pierce" and "[f]our binders of documents that were used during witness interviews." (Mem. of Law of the Special Investigative Committee of BB&T's Board Opposing Production of Its Counsel's Work Product ("SIC Mem.") (Doc. 63) at 4.) As to those notes of interviews that have not been disclosed, SIC counsel contends that those notes are protected by the attorney work-product privilege. (Id. at 8-9.)

As an initial matter, this court notes that the majority of cases cited by Plaintiff - Klein, Abbey, and Joy - have addressed the discovery of material provided to and reviewed by the respective investigative committee in each case. Here, as the SIC points out, the discovery that Plaintiff requests is in large part material that was not reviewed by the SIC. Thus, Plaintiff has already been provided the report and the information relied on by the SIC in reaching its decision. Cf. Kaplan v. Wyatt, No. 6361, 1984 WL 8274, at *211 (Del. Ch. Jan. 18, 1984) (unpublished) ("The report itself discloses in detail the breadth of the Committee's investigation and the reasons for its recommendation. Plaintiff has the Committee's position and its bases therefore. There is no doubt as to where it stands on the plaintiff's charges, or why. If the plaintiff has

- 11 -

evidentiary matter which tends to contradict the facts relied upon and disclosed by the Committee in reaching its conclusions, or facts which would tend to indicate that the Committee did not conduct its investigation in good faith, then I think that the time has come for the plaintiff to bring them forth . . . .").

Plaintiff also argues, however, that there are several references in the report to statements made by unidentified directors. As noted earlier, it appears to this court that relevant discovery includes not only the facts relied upon by the SIC but also whether the SIC's reliance upon counsel's representations as to those facts was reasonable. When considered in the latter manner, discovery as to the accuracy of the representations of unidentified directors' statements in the report could be relevant to the issues presently pending before this court.

SIC counsel does not appear to dispute the potential relevance of witness statements as disclosed to the SIC. Instead, SIC counsel contends that the notes of the witness interviews are privileged attorney work product.

To be eligible for work-product protection, a "document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation."

- 12 -

<u>Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.</u>, 967 F.2d 980,

984 (4th Cir. 1992) (emphasis in original).  Documents prepared in

the ordinary course of business do not qualify for this privilege.

<u>Id.</u>  In <u>National Union Fire Insurance Co.</u>, the Fourth Circuit

explained,

> We take notice of the fact that members of society
> tend to document transactions and occurrences to avoid the
> foibles of memory and to perpetuate evidence for the
> resolution of future disputes.  And because litigation is
> an ever-present possibility in American life, it is more
> often the case than not that events are documented with
> the general possibility of litigation in mind.  Yet,
> "[t]he mere fact that litigation does eventually ensue
> does not, by itself, cloak materials" with work product
> immunity.

<u>Id.</u> (quoting <u>Binks Mfg. Co. v. Nat'l Presto Indus., Inc.</u>, 709 F.2d

1109, 1118 (7th Cir. 1983)).  "Determining the driving force behind

the preparation of each requested document is therefore required in

resolving a work product immunity question."  <u>Id.</u>

The party asserting work-product protection bears the burden

of establishing its entitlement to this protection.  <u>Sandberg v. Va.</u>

<u>Bankshares, Inc.</u>, 979 F.2d 332, 355 (4th Cir. 1992), <u>vacated pursuant</u>

<u>to joint agreement and remanded for dismissal</u>, Nos. 91-1873(L),

CA-88-299-A, 91-174, CA-88-1020-A, 1993 WL 524680 (4th Cir. Apr. 7,

1993); <u>see also</u> <u>N.C. Elec. Membership Corp. v. Carolina Power & Light</u>

<u>Co.</u>, 110 F.R.D. 511, 515 (M.D.N.C. 1986) ("[T]he proponent must

provide the court with enough information to enable the court to

- 13 -

determine privilege, and the proponent must show by affidavit that precise facts exist to support the claim of privilege."). In <u>Suggs v. Whitaker</u>, a North Carolina district court explained,

> In meeting this burden, such party [the proponent of the protection] may not rely on conclusory allegations or mere statements in briefs. . . . Rather, it is incumbent upon the party to come forward with a specific demonstration of facts supporting the requested protection. Such demonstration should preferably be made through affidavits from knowledgeable persons. Failure to so satisfy this burden, even though affidavits have been submitted, will lead to denial of the motion.

152 F.R.D. 501, 505 (M.D.N.C. 1993) (internal citation omitted). "[C]laims that litigation became a realistic possibility at a certain time will normally have to be supported by affidavits which give specific factual detail for that conclusion." <u>Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos.</u>, 123 F.R.D. 198, 203 (M.D.N.C. 1988).

The SIC has filed an affidavit of counsel in response to Plaintiff's motion to compel. (Doc. 64.) Counsel states that "[a]ll of our work was done in anticipation of further proceedings in the lawsuit brought by Mr. Borchardt." (Declaration of Jennifer T. Harrod ("Harrod Decl.") (Doc. 64) ¶ 1.) It is undisputed that the SIC was established for the purpose of responding to this derivative litigation after the litigation had commenced. As a result, in light of all the facts of record, counsel's representation

- 14 -

is sufficient to establish that the notes were taken in anticipation of litigation.

A more difficult analysis concerns whether, as Plaintiff argues, any work-product privilege has been waived by inclusion of a summary of the defendant directors' statements in the report. As a qualified privilege, the work-product privilege is subject to waiver. United States v. Nobles, 422 U.S. 225, 239 (1975); In re Martin Marietta Corp., 856 F.2d 619, 624 (4th Cir. 1988). "As a general rule, implied waiver occurs when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege." Hawkins v. Stables, 148 F.3d 379, 384 n.4 (4th Cir. 1998).

The information most relevant to the issue of waiver is found at pages 7 and 8 of the report. In that section of the report, counsel summarized both their factual conclusions as to the information provided by the individual defendants and the statements of the individual defendants. That section of the report states as follows:

> The Shareholder Complaint alleges that the
> Individual Defendants knowingly caused or allowed BB&T
> personnel or Scott & Stringfellow brokers to make false
> statements to customers or to omit to provide material
> information in connection with the sale of ARS. Special
> Counsel found no evidence supporting these allegations.

First, the allegations are at odds with the roles that the Individual Defendants play within BB&T. The Individual Defendants are either former or current BB&T Board members, or they are senior executives at BB&T. None of them has direct contact with the brokers of BB&T's subsidiary, Scott & Stringfellow. None of them has a role in drafting or reviewing written materials sent to BB&T or Scott & Stringfellow customers. When interviewed, BB&T Board members commented that it is not the role of the Board to be involved in that level of detail. Each of the Individual Defendants denied in the strongest terms the accusation that he or she was involved in misleading BB&T or Scott & Stringfellow customers. One responded "absolutely not." Another stated that the allegation was "categorically untrue." A third Individual Defendant characterized it as "absurd" and "untrue." A fourth stated that the allegation was "patently false."

(Second Declaration of Thomas E. Skains, Ex. 2, Report of Investigation ("Skains Second Decl.") (Doc. 26-2) at 8-9.) As the second quoted paragraph reflects, the statements of the directors, both in summary form as well as through specific representations, were included in the report and relied upon by the SIC.

Again, this court finds <u>Klein</u> persuasive. The <u>Klein</u> court stated:

[U]nder the circumstances of this case, the undersigned finds that the attorney-client privilege and work-product protection has been waived by the manner in which the Report was prepared and communicated, and that, in any event, Plaintiff has made a substantial showing of need for these interview notes. . . . [T]o an extensive degree, the Committee delegated both the interview process and the report writing, to counsel. Thus it insulated itself and the rest of the board from firsthand knowledge of what the witnesses said. . . . Thus, the interview notes are necessary for the Plaintiffs to determine whether the

- 16 -

> Committee acted in good faith and conducted a reasonable
> investigation which led to the Report.

Klein, 2003 WL 22768424, at *12.

The finding of waiver in Klein is not unique. In In re Kidder Peabody Securities Litigation, for example, the court found a waiver of any applicable privilege, holding that "Kidder's affirmative use of the Lynch report and, by implication, of the underlying interview documents, triggers a waiver of the privilege for those portions of the documents that embody the substance of any statements by Kidder employees interviewed by the Lynch team prior to the issuance of its report." 168 F.R.D. 459, 473 (S.D.N.Y. 1996).

In light of the above-quoted information from the report, this court finds that counsel's conclusory representation as to the limited disclosures made to SIC counsel by the individual Defendants does not mandate a finding that work-product privilege has not been waived. Counsel, in the affidavit, describes the limited nature of the roles the individual defendants had with respect to ARS and alleges that "there were scant facts communicated from the Individual Defendants." (Harrod Decl. (Doc. 64) ¶ 6.) However, whatever those facts, the report states that counsel "found no evidence supporting these allegations" and that none of the directors

> has direct contact with the brokers of BB&T's subsidiary,
> Scott & Stringfellow. None of them has a role in drafting
> or reviewing written materials sent to BB&T or Scott &

- 17 -

> Stringfellow customers.  When interviewed, BB&T Board
> members commented that it is not the role of the Board to
> be involved in that level of detail.

(Skains Second Decl. (Doc. 26-2) at 8-9.)  This descriptive
information was relied on by the SIC and certainly appears to be
relevant to the determination to seek a motion to dismiss in this
case.

This court finds that any applicable attorney work-product
privilege has been waived as to any of the directors' factual
statements that were relied upon by counsel and are expressly stated
or referred to in the SIC report.

Nevertheless, upon review of counsel's interview notes, this
court finds that those notes do contain attorney work product.  As
counsel describes in her affidavit, the interview notes contain
"notations regarding possible follow-up inquiries, notes on
investigation strategy, and reminders of issues warranting further
analysis."  (Harrod Decl. (Doc. 64) ¶ 5.)  "Forcing an attorney to
disclose notes and memoranda of witnesses' oral statements is
particularly disfavored because it tends to reveal the attorney's
mental processes." (SIC's Mem. (Doc. 63) at 5 (quoting Upjohn v.
United States, 449 U.S. 383, 399 (1981)) (internal quotation marks
omitted).)

- 18 -

Accordingly, this court finds that any production of the relevant interview notes themselves should be limited to factual summaries of witness statements, with any of counsel's opinion work product and pure mental impressions redacted.  See In re Martin Marietta, 856 F.2d at 626 ("We think that when there is subject matter waiver, it should not extend to opinion work product for two reasons. First and most generally, opinion work product is to be accorded great protection by the courts.  While certainly actual disclosure of pure mental impressions may be deemed waiver, and while conceivably there may be indirect waiver in extreme circumstances, we think generally such work product is not subject to discovery."); In re Kidder, 168 F.R.D. at 473 ("[W]e limit the piercing of the privilege to purely factual summaries of witness statements, and thus avoid any danger that the waiver might encompass core attorney mental processes . . . ."). The production of factual summaries of witness statements may be accomplished either by producing separate summaries, as occurred with other witnesses, or by producing redacted versions of the original handwritten notes.

As a result of the foregoing,

**IT IS HEREBY ORDERED** that Plaintiff's motion to compel (Doc. 59) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the SIC shall disclose factual summaries of the interviews conducted by SIC counsel of the Directors named as Defendants in this case.  The disclosure required by this Order is limited to those matters relevant to the information summarized and disclosed in the section of the SIC report at pages 7 and 8 and quoted in this Order.

**IT IS FURTHER ORDERED** that disclosure may occur by producing either (1) a separate summary memorandum including all relevant factual information in the same form as with other witnesses for whom disclosure occurred or (2) the original notes of counsel with all work product and non-relevant information redacted.

**IT IS FURTHER ORDERED** that all other and further requests for relief not granted by this Order are **DENIED**.

**IT IS FURTHER ORDERED** that, upon request of the parties, the discovery period is **EXTENDED** for a period of three (3) months from the date of this Order.

This the 18th day of January, 2013.

_____
United States District Judge