IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CURTIS BORCHARDT,                    )
Derivatively on behalf of            )
Nominal Defendant BB&T               )
CORPORATION,                         )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )          1:10CV261
                                     )
KELLY S. KING, et al.,               )
                                     )
          Defendants,                )
                                     )
     and                             )
                                     )
BB&T CORPORATION,                    )
                                     )
          Nominal Defendant.         )


## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

    Presently, this court is asked to review the Recommendation

(Doc. 35) filed by the Magistrate Judge in accordance with 28

U.S.C. § 636(b), in which the Magistrate Judge recommends that

the Motion to Dismiss (Doc. 24) filed by Nominal Defendant BB&T

Corporation ("BB&T") be granted.  Plaintiff Curtis Borchardt

("Plaintiff") filed timely objections to the Recommendation

(Doc. 38), and BB&T has responded to those objections (Doc. 40).

    This court, upon review of the Recommendation, granted

discovery on the limited issues specified by N.C. Gen. Stat.

§ 55-7-44(a). (See Order (Doc. 46) at 4.) At the close of discovery, all parties filed supplemental briefs reaffirming their support of or opposition to the Magistrate Judge's Recommendation. (Docs. 73, 76, 77.) On October 10, 2014, this court held a hearing on the pending motions and took the matter under advisement.

BB&T's Motion to Dismiss (Doc. 24) is now ripe for adjudication, and after conducting a de novo review, this court will adopt the Magistrate Judge's Recommendation with the following additional analysis.

Also pending before this court is a Motion to Dismiss filed by Kelly S. King and the other individual defendants, all of whom were officers and directors of BB&T (the "Individual Defendants"). (Doc. 5.) North Carolina law requires courts to dismiss derivative actions when the corporation follows the statutory requirements laid out in section 55-7-44 of the North Carolina General Statutes. See N.C. Gen. Stat. § 55-7-44(a). Because this court finds that BB&T has complied with these statutory requirements, this court must dismiss the case. Accordingly, this court need not address the merits of

Plaintiff's claims against the Individual Defendants, and the Individual Defendants' Motion to Dismiss is now moot.[1]

## I.   **BACKGROUND**

This action's origin can be traced to another lawsuit filed in the United States District Court for the District of New Jersey, referred to herein as the "Dow Corning litigation." See Dow Corning Corp. v. BB&T Corp., Civil Case No. 09-5637 (FSH)(PS), 2010 WL 4860354 (D.N.J. Nov. 23, 2010).  In the Dow Corning litigation, plaintiffs Dow Corning Corporation and Hemlock Semiconductor Corporation filed suit alleging that BB&T and its subsidiary, Scott & Stringfellow, LLC, induced plaintiffs to invest in auction rate securities ("ARS") based on material misrepresentations and omissions concerning the liquidity of the ARS.  Id. at *1-2.

ARS are debt instruments with long-term maturities whose interest rates reset at short-term, definite intervals (varying

---

[1] Additionally, having dismissed BB&T from the suit, Plaintiff is not allowed to pursue an individual cause of action against the directors or officers for injuries to the corporation, unless (1) there was a special duty, such as a contractual duty, between the wrongdoer and the shareholder, or (2) the shareholder suffered an injury separate and distinct from that suffered by other shareholders.  See Barger v. McCoy Hillard & Parks, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997). Plaintiff has not pled facts to suggest a special duty or a separate and distinct injury caused by the Individual Defendants, confirming this court's decision to dismiss this suit.

from approximately a week to a month depending on the issuance) through a process known as a Dutch auction. See id. at *1. Dutch auctions take successively higher bids from buyers until all securities in the auction can be sold. Id. The price at which all securities can be sold is called the "clearing rate." Id. If there are not enough buy bids to match the sell orders, the auction "fails," and the ARS holder must wait until the next auction to attempt to sell. Id. Because there is no established secondary market for ARS, Dutch auctions are the primary source of liquidity for the securities.

In the Dow Corning litigation, the plaintiffs alleged that the defendants marketed the ARS to the plaintiffs as highly liquid securities that could be held as cash equivalents. Id. at *2. The plaintiffs further alleged that during the run-up to the 2008 financial crisis, the defendants had knowledge that the ARS market was deteriorating. Id. at *3. The defendants allegedly knew the liquidity of the ARS was in jeopardy; however, they continued marketing the securities to the plaintiffs. Id. Then, during the 2008 financial crisis, the market for ARS ultimately collapsed. Id. As a result, the plaintiffs were left holding over $640 million of illiquid ARS. Id. The defendants in the Dow Corning litigation filed a motion to dismiss, and the district court granted the motion as to the

claims against BB&T without prejudice.  Id. at *17.  The court
found that the plaintiffs had stated a claim under federal and
state law with respect to the conduct of Scott & Stringfellow,
and as such, the suit against Scott & Stringfellow was allowed
to continue.  Id.

In the present case, Plaintiff sues derivatively on behalf
of BB&T.  Plaintiff was a shareholder of BB&T during the events
alleged in the Dow Corning litigation.  He filed his complaint
with this court on April 1, 2010, accusing the Individual
Defendants, who are current and former officers and board
members of BB&T, of breaching their fiduciary duties to the
corporation.  (Complaint ("Compl.") (Doc. 1) ¶¶ 1-2.)  The
complaint filed by Plaintiff parallels the claims made in the
Dow Corning litigation, specifically alleging a breach of
fiduciary duties by the Individual Defendants in connection with
the marketing and sale of ARS.  (Id. ¶ 2.)  Plaintiff contends
that these breaches by the Individual Defendants subjected BB&T
to "costs and expenses incurred in connection with the [Dow
Corning litigation], as well as further investigation of the
unethical and illicit activities."  (Id. ¶ 7.)

On December 11, 2009, prior to the filing of a complaint in
this court and as required by North Carolina law, Plaintiff sent
a demand letter to BB&T's board of directors ("the Board").

(Compl. ¶ 71, Ex. A, Demand Letter (Doc. 1-2).)  In his letter, Plaintiff demanded the Board "take action to remedy breaches of fiduciary duties by the directors and certain executive officers of [BB&T]."  (Id. at 1.)

On February 18, 2010, the Board directed BB&T's general counsel to advise Plaintiff that the Board had determined that undergoing the requested action would not be in the best interest of BB&T or its shareholders.  (Compl. ¶ 72, Ex. B (Doc. 1-3).)  Plaintiff specifically alleged in his Complaint that the Board, in reaching its decision to reject his demand letter, "did not conduct any investigation of the Demand, did not appoint a committee of independent directors to investigate or consider the Demand, did not retain any independent counsel or other advisors to assist in investigating or considering the Demand, nor do anything other than refuse the Demand out of hand."  (Compl. (Doc. 1) ¶ 73.)

Portions of depositions taken by Plaintiff suggest, at a minimum, that there is some dispute of fact as to how much discussion occurred prior to rejecting Plaintiff's original

demand.[2]  Some of the deposition excerpts have partially

substantiated this claim that the Board's initial rejection of

the Shareholder Demand was little more than a perfunctory "no"

vote.

Nonetheless, evidence exists in the record to the contrary.

According to the deposition of Mr. Thomas E. Skains, the Board

(including those directors who would later form the Special

---

[2] In King David Boyer, Jr.'s deposition (Pl.'s Mem., Ex. A, Deposition of King David Boyer, Jr. ("Boyer Dep.") (Doc. 76-2) at 3), the following transpired:

> Q.  Okay.  Did you, yourself, do an investigation into the allegations of the demand?
> A.  I did not do any of that – an investigation.
> Q.  Okay.  Do you know if any of the board members did?
> A.  I don't believe so.

And in John Littleton Glover, Jr.'s deposition (Pl.'s Mem., Ex. B, Deposition of John Littleton Glover, Jr. ("Glover Dep.") (Doc. 76-3) at 3), the following:

> Q.  Okay.  And what did the Board do in response to this letter?
> A.  Well, we discussed it.  And then we instructed the general counsel to respond to it.
>     . . . .
> Q.  Okay.  And do you recall, did the Board do an investigation into the allegations alleged in the demand letter?
> A.  At that point in time, no.

And, lastly, in Mr. Skains' deposition (Pl.'s Mem., Ex. C, Skains Dep. (Doc. 76-4) at 4), the following:

> Q.  Did the board do an investigation with regards to these allegations to the officers?
> A.  No, they would not have.

Committee) had a "board package in advance of the meeting," "had
a lengthy discussion about the [demand] letter," had "general
counsel of [BB&T] [do] investigations on the nature of the
letter," and had "independent knowledge and experience as to
whether [the Board member] performed any of these alleged acts."
(Pl.'s Mem. of Law in Further Opp'n to Nominal Def. BB&T's and
the Individual Defs.' Mots. to Dismiss & Supplemental Objections
to Mag. Sharp's Report & Recommendation ("Pl.'s Resp. &
Supplemental Objections"), Ex. C, Deposition of Thomas E. Skains
("Skains Dep.") (Doc. 76-4) at 3-4.)  Mr. Skains, however, noted
that the Board conducted no independent investigation or inquiry
of its own, did not perform a "separate investigation by the
board or some board members of the actions of others," and did
not conduct any investigation with respect to the allegations
raised towards the officers.  (See id.)

   After receiving the rejection letter, Plaintiff filed suit
with this court on April 4, 2010.  (Compl. (Doc. 1).)  On
April 27, 2010, the Board formed a special investigative
committee ("Special Committee") to investigate and evaluate
Plaintiff's derivative claim.  (Second Decl. of Thomas E. Skains
("Skains Decl.") (Doc. 26) ¶ 3.)  The Special Committee
consisted of three of the then-current BB&T directors –
Thomas E. Skains; J. Littleton Glover, Jr.; and K. David Boyer,

Jr. (Id.) These three directors who comprised the Special
Committee were among the directors who had previously voted to
dismiss Plaintiff's demand letter.  (Skains Dep. (Doc. 76-4) at
3.)  The resolutions of the Board of Directors establishing the
Special Committee authorized the Special Committee to employ
independent counsel to participate in and assist in the
investigation, and also authorized the Special Committee to have
full access to any and all of the books and records of BB&T and
its subsidiaries, including Scott & Stringfellow, LLC. (Skains
Decl., Ex. 1, Apr. 27, 2010 Resolutions of the Board of
Directors of BB&T Corp. (Doc. 26-1) at 2-3.)

On May 11, 2010, the Special Committee retained the law
firm of Brooks, Pierce, McLendon, Humphrey & Leonard ("Brooks
Pierce") to serve as special counsel during the course of the
investigation.  (Skains Decl. (Doc. 26) ¶ 6.)  After conducting
an extensive review, Brooks Pierce recommended that the Board
not pursue any action against the Individual Defendants.
(Skains Decl., Ex. 2, Brooks Pierce Report of Investigation
(Doc. 26-2) at 22-23.)  Specifically, Brooks Pierce, as Special
Counsel,

> [I]nterviewed thirteen officers and employees of BB&T
> and Scott & Stringfellow, as well as all twenty-five
> Individual Defendants.  The actions complained of in
> the [Dow Corning] complaint were those of Jeff Boyd,
> the sales person who sold ARS to [Dow Corning], and of
> John Elster, the BB&T Capital Markets trader who

participated in ARS auctions where BB&T was a primary dealer or primary co-dealer.  Special Counsel interviewed both Mr. Elster and Mr. Boyd.

Special Counsel interviewed individuals charged with regulatory compliance within Scott & Stringfellow, and individuals charged with compliance for BB&T.  Special Counsel also interviewed individuals with responsibility for risk management within Scott & Stringfellow.  During the relevant period, the Chief Operating Officer of BB&T attended Scott & Stringfellow board meetings.  Special Counsel interviewed Kelly King and Chris Henson, respectively the prior and current COO, who are also two of the Individual Defendants.

Special Counsel reviewed thousands of pages of documents, including board minutes for BB&T, board minutes for Scott & Stringfellow, audit committee minutes for BB&T, compliance materials, and ARS information provided to Scott & Stringfellow customers.  In addition, Special Counsel had a database of more than 87,000 e-mails, which included correspondence between clients and Scott & Stringfellow.  This database was searched for relevant e-mails which were reviewed by Special Counsel.

(Id. at 7-8.)

Brook Pierce's report to the Special Committee concluded as follows:

Special Counsel has not found any evidence of any breach of fiduciary duties within the areas that are the focus of [Plaintiff's] claims by any of the Individual Defendants. More than that, Special Counsel did not find any evidence that either BB&T or Scott & Stringfellow made misrepresentations to its clients regarding ARS, that either of them caused the failure of the ARS market, or that either of them failed to respond appropriately to its customers in the aftermath of the market disruptions in February of 2008.

Pursuant to the April 27, 2010 Resolution
establishing its existence, the [Special Committee] is
charged with determining "in its independent judgment
the best interest of the shareholders of the Company
and what, if any, action, claim or demand shall be
made or asserted against any person or other entity
and whether any legal action shall be initiated or
maintained against any person or other entity."  There
are substantial risks to BB&T in moving forward with
the claims [Plaintiff] proposes to be brought against
the Individual Defendants. Obviously, that course of
action would be a significant distraction to these
officers and board members and thus would take time
away from their work for BB&T's [sic].  This course of
action would also likely have a negative impact on
BB&T's ability to attract and retain board members and
officers.  In addition, BB&T would incur expenses in
connection with bringing such claims and would likely
be asked by the Individual Defendants to indemnify
them against their own costs to defend the claims.  It
is the opinion of the Special Counsel that no purpose
other than disruption and unnecessary expense to the
company would be served by filing an apparently
meritless (from a legal and factual point of view)
action against the Individual Defendants.

(Id. at 22-23.)

Based on Brooks Pierce's findings and the recommendation of
the Special Committee, BB&T moved to dismiss the derivative suit
initiated by Plaintiff.  (Doc. 24.)  In reviewing this Motion to
Dismiss, the Magistrate Judge found the Special Committee
consisted of independent directors, conducted a reasonable
inquiry, and acted in good faith.  (Recommendation (Doc. 35) at
8-9.)  Based on these conclusions, the Magistrate Judge
recommended that the complaint be dismissed under the mandatory
provisions of North Carolina statutes governing a corporation's

dismissal of derivative proceedings, N.C. Gen. Stat. § 55-7-44.
(Id. at 2, 11.)

Plaintiff objected to the Recommendation, citing a number
of alleged errors and requesting that this court "reject the
Recommendation." (Pl.'s Objections to Recommendation of Mag.
Judge P. Trevor Sharp regarding Def.'s Mot. to Dismiss ("Pl.'s
Initial Objections") (Doc. 38). Two of Plaintiff's objections
contested the Magistrate Judge's denial of further discovery.
(Id. Objections 4, 6.) Finding the need for further discovery
before determining if BB&T complied with the provisions of N.C.
Gen. Stat. § 55-7-44, this court ordered limited discovery.
(Order (Doc. 46).)

At the conclusion of discovery, Plaintiff submitted a
supplemental list of objections to the Magistrate Judge's
Recommendation, continuing to argue that the Magistrate Judge's
determination that BB&T complied with N.C. Gen. Stat. § 55-7-44
was in error. (Pl.'s Resp. & Supplemental Objections (Doc. 76)
at 11-21.) For the most part, Plaintiff's supplemental
objections mirror arguments made in Plaintiff's initial list of
objections but are supported by facts uncovered during
discovery. In an effort to review Plaintiff's objections
thoroughly, this court has considered all of Plaintiff's

objections, including those raised in Plaintiff's initial list

of objections[3] and those raised after discovery.  (Docs. 38, 76.)

## II.  <u>LEGAL STANDARDS</u>

This court is required to "make a de novo determination of

those portions of the [Magistrate Judge's] report or specified

proposed findings or recommendations to which objection is

made."  28 U.S.C. § 636(b)(1).  This court "may accept, reject,

or modify, in whole or in part, the findings or recommendations

made by the [M]agistrate [J]udge . . . or recommit the matter to

the [M]agistrate [J]udge with instructions."  <u>Id.</u>

This court has appropriately reviewed the portions of the

Magistrate Judge's Recommendation to which objection was made

and has made a de novo determination which is in agreement with

_____

[3]  This court will not address in detail several of the
objections Plaintiff raised in his initial list of objections.
First, Plaintiff's objections as to the Magistrate Judge's
denial of discovery have been mooted, as this court granted
limited discovery at Plaintiff's request.  (<u>See</u> Pl.'s Initial
Objections (Doc. 38) Objections 4, 6.)  Second, this court
addresses the merits of the parties' argument in this Memorandum
Opinion, and as a result, this court will not consider whether
Plaintiff's Complaint should be dismissed because it does not
comply with the heightened pleading requirements of N.C. Gen.
Stat. § 55-7-44(d).  (<u>See</u> <u>id.</u> Objection 5.)  Finally, the
Magistrate Judge's Recommendation did not address the merits of
the Individual Defendants' pending Motion to Dismiss (Doc. 5)
because N.C. Gen. Stat. 55-7-44(a) requires that this court
dismiss the derivative proceeding once it finds that the Special
Committee was independent, has acted in good faith, and has
conducted a reasonable inquiry.  Therefore, this court will not
address Plaintiff's arguments concerning that motion.  (<u>See</u>
Pl.'s Resp. & Supplemental Objections (Doc. 76) at 21-24.)

the Magistrate Judge's Recommendation.  This court therefore adopts the Magistrate Judge's Recommendation with the following additional analysis in light of the discovery and supplemental pleadings.

This case is properly before this court on diversity jurisdiction under 28 U.S.C. § 1332.  A federal court sitting in diversity must apply state substantive law and federal procedural law.  See, e.g., Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Hanna v. Plumer, 380 U.S. 460 (1965).  Although any monetary recovery from a derivative suit inures to the company and not the plaintiff, the Supreme Court has made clear that for purposes of diversity jurisdiction, a corporation is aligned as a defendant in a derivative suit if the corporation's directors are antagonistic towards the shareholder complainants, such as when directors refuse plaintiff's demand to pursue a legal action.  See Smith v. Sperling, 354 U.S. 91, 96–97 (1957). Here, the directors rejected Plaintiff's initial demand. Therefore, BB&T is aligned as a defendant, and complete diversity is maintained.

Although presented to this court as a motion to dismiss, this court finds reason to treat BB&T's motion as one for summary judgment.  First, under Rule 12(d) of the Federal Rules of Civil Procedure, if "matters outside the pleadings are

- 14 -

presented . . . the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); see Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985). "When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment." Gay, 761 F.2d at 177.

Second, "the nature of a corporation's motion to dismiss pursuant to the recommendation of its special litigation committee is most similar to a summary judgment motion." See, e.g., Booth Family Trust v. Jeffries, 640 F.3d 134, 139 (6th Cir. 2011); Kaplan v. Wyatt, 484 A.2d 501, 518-19 (Del. Ch. 1984); see also Sojitz Am. Capital Corp. v. Kaufman, 61 A.3d 566, 571–73 (Conn. App. Ct. 2013) (noting a majority of courts have held that a motion to dismiss a shareholder derivative action based on the recommendation of a special litigation committee is procedurally distinguishable from a typical motion to dismiss under Rule 12(b)(6)). Here, the parties have relied on numerous documents outside the pleadings, including, inter alia, depositions, declarations, and reports. The parties have also conducted and incorporated considerable discovery into

their motions.  Therefore, this motion is properly treated as a motion for summary judgment.[4]

A motion for summary judgment is appropriately denied when an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates a genuine issue of material fact exists.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).  In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  The court must view the facts in the light most favorable to the nonmovant, drawing inferences favorable to that party if such inferences are reasonable.  Id. at 255.  However, there must be more than a factual dispute; the fact in question must be material, and the dispute must be genuine.  Fed. R. Civ. P. 56(c); Anderson, 477 U.S. at 248.  A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

---

[4] Due to this court's treatment of BB&T's motion as one for summary judgment, Plaintiff's initial objections as to the Magistrate Judge's failure to "test the sufficiency of the Complaint in light of the facts that existed at the time Plaintiff filed it" and the Magistrate Judge's consideration of "matters outside of the pleadings" are overruled.  (See Pl.'s Initial Objections (Doc. 38) Objections 1, 7.)

# III. **ANALYSIS**

Plaintiff objects to the Magistrate Judge's finding that BB&T complied with North Carolina statutes governing a corporation's dismissal of a derivative proceeding, arguing that the vote by BB&T's board of directors (1) tainted any subsequent decision by the Special Committee, which was made up of those same directors and (2) made it impossible for the Special Committee to exercise independence from the Board, base its decision to dismiss the derivative proceeding on a reasonable inquiry, or act in good faith. (See Pl.'s Initial Objections (Doc. 38) Objections 2, 3; see also Pl.'s Resp. & Supplemental Objections (Doc. 76) at 5-7.)

Under North Carolina law, a corporation's board of directors possesses general authority to exercise corporate powers. N.C. Gen. Stat. § 55-8-01(b). Among these powers is the right to bring suit on behalf of the corporation or maintain a suit brought derivatively by a shareholder on behalf of the corporation. See N.C. Gen. Stat. §§ 55-3-02(a)(1), 55-7-44.

As part of the board's power to maintain a suit brought derivatively, the board has the power to dismiss that derivative claim if it finds the suit will not be in the best interest of the corporation. See N.C. Gen. Stat. § 55-7-44(a); Burks v. Lasker, 441 U.S. 471 (1979) (leaving it to state law to

determine whether the board can dismiss a derivative claim).
Contemplating the competing concerns of structural bias - where
directors may unreasonably favor dismissal of claims against
other directors - and baseless strike suits levied by
disgruntled shareholders, courts throughout the 1980s and early
1990s experimented with judicial mechanisms for evaluating a
board's determination that a derivative claim should be
dismissed. See James D. Cox & Thomas L. Hazen, Business
Organizations Law § 15.6 (3d ed. 2011); see also Alford v. Shaw,
320 N.C. 465, 358 S.E.2d 323 (1987) (adopting a form of judicial
review of a corporation's dismissal similar to that created
under Delaware law, see Zapata Corp. v. Maldonado, 430 A.2d 779
(Del. Ch. 1981)).

In 1995, the North Carolina General Assembly adopted the
language of the Revised Model Business Corporation Act
concerning derivative suits. See Greene v. Shoemaker, No. 97-
CVS-2118, 1998 WL 34032497, at *4 (N.C. Super. Sept. 24, 1998).
In doing so, the General Assembly abandoned the existing statute
that had required more exacting judicial review of a
corporation's decision to dismiss a derivative proceeding. Cf.
Alford v. Shaw, 320 N.C. at 470-71 (finding that N.C. Gen. Stat.
§ 55-55 required thorough judicial review of derivative suits

and whether any shareholder would be substantially affected by the dismissal of such suits).

The current statute, section 55-7-44, now requires that courts dismiss a derivative proceeding on motion of the corporation, provided the determination by the corporation that the litigation is not in the best interest of the corporation meets three requirements. N.C. Gen. Stat. § 55-7-44(a).[5] First, either all "independent directors" on the full board (provided those independent directors constitute a quorum) or a committee of at least two independent directors must make the decision not to pursue the litigation. Id. § 55-7-44(b).[6] Second, the committee must conduct a reasonable inquiry and base its conclusions on that inquiry. Id. § 55-7-44(a). Third, the committee must make its determination in good faith. Id.; see also Madvig v. Gaither, 461 F. Supp. 2d 398, 404 (W.D.N.C. 2006).

---

[5] The parties do not contend, nor is it the case, that N.C. Gen. Stat. § 55-7-44 is a procedural rule barred by Erie and its progeny to a federal court sitting in diversity. See Crown Crafts, Inc. v. Aldrich, 148 F.R.D. 547, 548-49 (E.D.N.C. 1993).

[6] Subsection (f) allows a board to move for a court-appointed panel of one or more independent persons to determine if maintaining the derivative suit is in the corporation's best interest. N.C. Gen. Stat. § 55-7-44(f). Since BB&T never requested this court to appoint a panel, this subsection does not factor into the current analysis.

Subsection (e) of the statute determines who bears the burden of proving independence, good faith, and reasonableness as outlined in section 55-7-44(a).  N.C. Gen. Stat. § 55-7-44(e).  The corporation bears the burden of proof if "independent directors" do not constitute a majority of the board of directors at the time the board decides to dismiss the derivative suit.  Id.  The shareholder-plaintiff bears the burden of proof if "independent directors" do in fact make up a majority of the board of directors.  Id.  The term "independent director" is not defined in the statute - other than the list of three factors in subsection (c) that will not keep a director from being considered "independent."  See id. § 55-7-44(c).  As a result, it is somewhat unclear whether the vote by the Board to dismiss Plaintiff's initial request in this case shifts the burden to the corporation to prove the Special Committee acted independently, in good faith, and based upon a reasonable inquiry.  In an abundance of caution, this court places the burden of proving compliance with section 55-7-44(a) on BB&T.  Nonetheless, for the reasons stated herein, this court finds that the corporation has met that burden.

### A.    Independent Committee

"A director is determined to be independent where he or she is capable of making a decision in the corporation's interest,

rather than some other interest, such as their [sic] own personal interests." Madvig, 461 F. Supp. 2d at 404 (citing First Union Corp. v. Suntrust Banks, Inc., No. 01-8036, 2001 WL 1885686, at *32 (N.C. Super. Aug. 10, 2001)). As summarized in the Magistrate Judge's Recommendation, the directors comprising the Special Committee had no personal or pecuniary interest preventing a decision in BB&T's best interest. (Recommendation (Doc. 35) at 7.) The three directors comprising the Special Committee were outside directors, not employees of BB&T. (Nominal Def. BB&T Corp.'s Mem. in Supp. of Mot. to Dismiss (Doc. 25) at 9.) This court finds nothing in the materials before it raising a genuine issue as to the independence of the members constituting the Special Committee.

Plaintiff does not argue that the members of the Special Committee had a disqualifying personal interest precluding them from deciding the case in BB&T's best interest. Rather, Plaintiff's contention is that the prior rejection of Plaintiff's demand letter by the directors, including those directors who constituted the Special Committee, taints the subsequent action of the Special Committee. (Pl.'s Mem. of Law in Opp'n to Nominal Def. BB&T Corp.'s Mot. to Dismiss ("Pl.'s Mem.") (Doc. 32) at 13.)

However, as the Magistrate Judge recognized,

- 21 -

> [O]ne factor which by statute does not cause a
> director to be not independent is the "approval by the
> director of the act being challenged in the derivative
> proceeding or demand if the act resulted in no
> personal benefit to the director."  N.C. Gen. Stat.
> § 55-7-44(c)(3).  Plaintiff has not alleged that any
> director benefitted personally from the act being
> challenged.  Reasoning from subsection (c)(3), the
> fact that a director voted to reject Plaintiff's
> written demand to bring suit based on the act being
> challenged in the demand also should not disqualify
> the director.

(Recommendation (Doc. 35) at 7-8.)  Plaintiff has not identified

any cases, nor has this court found any cases, that suggest that

the sole fact of a director's vote declining to pursue a

derivative action later disqualifies that director from

participation in further investigation, reconsideration of the

earlier decision, or, most importantly, the ability to review

subsequent investigation independently, impartially, and in the

best interests of the corporation.

Plaintiff cites a Delaware case, Biondi v. Scrushy, 820

A.2d 1148 (Del. Ch. 2003), in support of his argument that a

director's prejudgment that plaintiff's claims are without

merit, followed by an investigation whose sole purpose is to

confirm that claim, does not reflect independence.  (See Pl.'s

Resp. & Supplemental Objections (Doc. 76) at 12-14.)  However,

the Biondi case is readily distinguishable on its facts.  In

Biondi, the board of directors appointed a special committee but

the board also hired its own counsel to conduct an investigation

separate from and parallel to that of the special committee.

See Biondi, 820 A.2d at 1165-66, aff'd sub nom. In re

HealthSouth Corp. Shareholders Litig., 847 A.2d 1121 (Del.

2004). Then, before the special committee's investigation was

complete, the special committee chairman publicly announced that

the report of the board's own investigation vindicated the main

defendant, the person the special committee was to be

independently investigating. See id. Based on these facts, the

Biondi court questioned, "How can the court and the company's

stockholders reasonably repose confidence in [a special

committee] whose Chairman has publicly and prematurely issued

statements exculpating one of the key company insiders whose

conduct is supposed to be impartially investigated by the

[special committee]?" Id.

　　Sitting in diversity, this court assumes the role of a

North Carolina court and applies the relevant North Carolina

law. Due to their expertise in deciding issues of corporate law

and North Carolina courts' past reliance on their decisions,

this court must give due weight to Delaware courts and their

decisions, such as Biondi, and this court must consider the

extent to which a North Carolina court would be likely to rule

similarly. Whether the Supreme Court of North Carolina would

follow Biondi's holding is unknown. However, this court finds

several reasons why a North Carolina court would not find <u>Biondi</u>
persuasive in this case.  First, it is worth noting that
Delaware and North Carolina differ in how much weight to give a
special committee's decision to dismiss a derivative claim.
Delaware courts are allowed to exercise discretion in whether to
adopt or reject the findings of a special committee and are
allowed to scrutinize the merits of the special committee's
determination.  <u>See</u> Model Bus. Corp. Act § 7.44 cmt. 2 (1998);
<u>see also</u> <u>Biondi</u>, 820 A.2d at 1164 ("The court <u>may</u> defer to the
committee[] . . . ." (emphasis added)).  In contrast, North
Carolina has adopted the Model Business Corporation Act, which
does not authorize the court to review the reasonableness of the
board's decision and requires that the court dismiss if it finds
that the committee complied with section 55-7-44(a).  <u>See</u> Model
Bus. Corp. Act § 7.44 cmt. 2 (1998); <u>see also</u> N.C. Gen. Stat.
§ 55-7-44(a) ("The court <u>shall</u> dismiss a derivative proceeding
. . . ." (emphasis added)).  Therefore, although the decisions
of Delaware courts are persuasive on many facets of corporate
law, the difference in Delaware and North Carolina law with
regard to the authority of a special committee's decision to
dismiss a derivative claim suggests to this court that the
Supreme Court of North Carolina would not necessarily adopt the
holding in <u>Biondi</u>.

Second, even if the Supreme Court of North Carolina fully adopted the reasoning in _Biondi_, _Biondi_ involved a great number of "troubling facts" pointing to a complete lack of independence on the part of the members of a special committee, such as: (1) a special committee member's service with the main defendant on the board of an important foundation, (2) the advisory nature of the special committee's findings, (3) the full board's hiring of outside counsel to conduct a parallel investigation beside the special committee's investigation, and (4) statements made by the chairmen of the special committee saying that the board's parallel investigation had exonerated the main defendant. _Biondi_, 820 A.2d at 1165-66.

Here, the Magistrate Judge recognized that the Special Committee at issue in this case exhibited the desired qualities identified by the _Biondi_ court: (1) "lack of compromising ties to the key officials suspected of malfeasance," (2) "full empowerment by the board of the special committee to act for the company," and (3) "committee behavior consistent with a duty to carefully and open-mindedly investigate the alleged wrongdoing." (Recommendation (Doc. 35) at 7 n.1 (citing _Biondi_, 820 A.2d at 1156).) This court agrees with these findings made by the Magistrate Judge. Because the "troubling facts" from _Biondi_ were not present in this case, _Biondi_ is not persuasive

authority here.  See Highland Legacy Ltd. v. Singer, No. Civ.A.
1566-N, 2006 WL 741939, at *6 & n.69 (Del. Ch. Mar. 17, 2006)
(distinguishing Biondi and finding that a generalized statement
in public filing expressing management's intention to defend
against the litigation was not akin to prejudgment); In re
Oracle Corp. Derivative Litig., 824 A.2d 917, 924 n.11 (Del. Ch.
2003) (distinguishing Biondi and finding that a special
committee's determination that a defendant's answer was
plausible was not prejudgment of the issue as the special
committee in Biondi had done).[7]

Furthermore, this court agrees with the Magistrate Judge
that the declaration and testimony of each of the Special
Committee members convinces this court that "he was capable of
making a decision in the corporation's interest and that he met
the statutory requirement of being an 'independent director.'"
(Recommendation (Doc. 35) at 7 n.1.)  And by swearing under

---

[7] This court also has the benefit of reviewing the completed
work of the Special Committee to determine whether the Special
Committee was able to act independently.  In Biondi, the special
committee investigation was ongoing, and the Biondi court ruled
that it was "inconceivable that the [special committee] will
ever be able to meets its Zapata burden in support of a motion
to terminate this litigation" due to the "unusual and highly
troubling facts" listed above.  Biondi, 820 A.2d at 1165-66.
Here, this court has the declarations of the members of the
Special Committee and the investigation that was completed, as
discussed in the following sections.  This work confirms that
the Special Committee members were independent, and it is
another reason why this court finds Biondi unpersuasive.

oath, the Special Committee members put their "liberty interests on the line" in making these statements, increasing their weight with this court.  See Madvig, 461 F. Supp. 2d at 409.  Because Plaintiff has not given this court reason to doubt these statements made by the Special Committee members, this court concludes that BB&T has demonstrated the Special Committee's independence and that no genuine dispute remains as to this issue.

### B.  **Reasonable Inquiry**

Pursuant to section 55-7-44(a), a special committee must base its ultimate decision as to whether pursuing or foregoing derivative litigation is in the best interests of the corporation on a "reasonable inquiry."  See N.C. Gen. Stat. § 55-7-44(a).  "To be reasonable, the inquiry must be commensurate in scope with the nature of the issues raised by the complainant."  Madvig, 491 F. Supp. 2d at 407.  When examining whether a committee has conducted a reasonable investigation into a derivative claim, courts have examined factors, such as "whether the committee engaged independent counsel to assist in the investigation" and "whether the committee reviewed the testimony of or interviewed directors,

officers, and employees." Boland v. Boland, 194 Md. App. 477, 517, 5 A.3d 106, 130 (2010).[8]

As found by the Magistrate Judge, the inquiry here was reasonable. The Special Committee obtained outside counsel, Brooks Pierce, who is experienced in conducting such investigations and who spent over five months interviewing all twenty-five Individual Defendants and reviewing thousands of pages of documents and tens of thousands of emails. (Recommendation (Doc. 35) at 8.) Brooks Pierce prepared a report that examined each of Plaintiff's claims. (See Brooks Pierce Report of Investigation (Doc. 26-2).) The Special Committee then based its decision on Brooks Pierce's thorough report and its conclusions flowed logically from the report. (Recommendation (Doc. 35) at 8.) Based on its own review of the materials, this court agrees with the Magistrate Judge's conclusion that the Special Committee's determination was based on a reasonable inquiry. (Id. at 9.)

---

[8] BB&T does not contend that the statutory prerequisite of reasonable inquiry was met with regards to the full board's rejection of Plaintiff's initial demand letter. (Individual Defs.' & BB&T Corp.'s Reply Br. in Supp. of Mots. To Dismiss ("BB&T's Reply") (Doc. 77) at 1 n.1.) Therefore, this court only examines the Board's action to determine whether it raises a genuine dispute as to the good faith, reasonableness, and independence of the Special Committee's later recommendation not to pursue the litigation.

Plaintiff advances two arguments - one related to the scope of the investigation and one related to the Special Committee's reliance on Brooks Pierce's investigation - attacking the reasonableness of the Special Committee's inquiry.  First, with respect to the scope of the inquiry, Plaintiff contends that the Special Committee "failed to truly 'inquire' into any" of the issues in question and that Brooks Pierce's report addressed these questions "in an extremely cursory and superficial fashion."  (Pl.'s Resp. & Supplemental Objections (Doc. 76) at 15–16.)  Second, as to the reliance by the Special Committee on the report, Plaintiff argues that the Special Committee "members accepted the contents of the [Brooks Pierce] Report without any additional inquiry, failing to question even the most poorly supported exculpatory declarations."  (Id. at 16.)

This court finds that the scope of Brooks Pierce's report and the Special Committee members' reliance on the report were both reasonable.  As to the scope of the report, Brooks Pierce interviewed thirteen officers and employees of BB&T and Scott & Stringfellow, all twenty-five Individual Defendants in this case, and both of the employees whose actions formed the basis of the Dow Corning litigation.  (Brooks Pierce Report of Investigation (Doc. 26-2) at 7-8.)  The investigation continued into over 87,000 emails and thousands of pages of documents,

including board and committee minutes of both BB&T and Scott &
Stringfellow.  (Id. at 8.)  Most importantly, this substantial
investigation remained focused and commensurate in scope with
the Shareholder Complaint concerning false statements made in
connection with the sale and/or marketing of ARS.

As to the Special Committee's reliance on the Brooks Pierce
report, this court disagrees with Plaintiff's argument for both
legal and factual reasons.  Legally, section 55-7-44 does not
change the general rule found in section 55-8-30 of the North
Carolina General Statutes that directors are entitled to rely in
good faith on the reports of others, including attorneys.  See
N.C. Gen. Stat. § 55-8-30(b)(2); Model Bus. Corp. Act § 7.44
cmt. 2 (1998).  Factually, based on the record before this
court, this court disagrees with Plaintiff's assertion that the
Special Committee members did not engage in the investigation.
Over the course of the Brooks Pierce investigation, the Special
Committee met several times to discuss the Special Committee
members' independence and the scope of the investigation.
(Skains Decl. (Doc. 26) ¶¶ 5, 7, 9.)  Moreover, Brooks Pierce
provided the Special Committee with periodic updates on the
findings of the investigation.  (Id. ¶ 8.)  Finally, the Report
of the Special Committee to the BB&T Board of Directors reflects
the fact that the Special Committee carefully and thoroughly

reviewed and considered the Brooks Pierce Report and Plaintiff's claims.  (See Skains Decl., Ex. 3 (Doc. 26-3); see also Skains Dep., Ex. C (Doc 76-3) at 7 ("This report was drafted by our special counsel, presented to us, and we reviewed it at a face-to-face committee meeting at length section by section to review the facts, the analysis, the findings, and conclusions of our counsel.").)

Therefore, this court finds that there is no genuine dispute as to whether the conclusions reached by the Special Committee upon the recommendations of the Brooks Pierce report were based on a reasonable inquiry.  (See id. ¶ 10.)

### C.   Good Faith

Section 55-7-44(a) requires that the special committee make its determination to dismiss the derivative proceeding "in good faith."  N.C. Gen. Stat. § 55-7-44(a).  To determine whether the special committee acted in "good faith," a court is to look to "the spirit and sincerity with which the investigation was conducted, rather than the reasonableness of its procedures on the basis for its conclusions."  Model Bus. Corp. Act § 7.44 cmt. 2 (1998) (quoting Abella v. Univ. Leaf Tobacco Co., 546 F. Supp. 795, 800 (E.D. Va. 1982)); see also Madvig, 461 F. Supp. 2d at 408 (defining a good faith decision as one made "honestly,

conscientiously, fairly, and with undivided loyalty to the

corporation"). [9]

Of course, merely conducting an investigation as a sham or

pretext for papering over a predetermined outcome would not be

in good faith.  See Madvig, 461 F. Supp. 2d at 409; Swenson v.

---

[9] Both Plaintiff and BB&T rely, in part, on London v. Tyrrell to support their respective positions.  In London, the court analyzed the independence and good faith of a special committee.  London v. Tyrrell, Civil Action No. 3321-CC, 2010 WL 877528 (Del. Ch. Mar. 11, 2010).  There, board members who would later constitute the special committee reviewed the merits of shareholders' derivative claims before the special committee was formed.  Id. at *15.  The court recognized that "[w]hen [Special Committee] members are simply exposed to or become familiar with a derivative suit before the [Special Committee] is formed this may not be enough to create a material question of fact as to the [Special Committee's] independence."  Id.  On the other hand, the court noted that "if evidence suggests that the [Special Committee] members prejudged the merits of the suit based on that prior exposure or familiarity, and then conducted the investigation with the object of putting together a report that demonstrates the suit has no merit, this will create a material question of fact . . . ."  Id.  BB&T argues that based on the reasoning of London, both prejudgment and a continued bias are required to create a material question of fact.

This court fails to read London as meaningfully advancing the argument of either party.  London describes the applicable legal result under a strict duality of factual scenarios: First, those where "simple exposure" to a derivative suit fails to create a material question of fact and, second, those where full-blown prejudgment of the merits in conjunction with the continued object of penning a report consistent with such prejudgment does create a material fact.  Notably, London does not speak to the factual scenario present in this case, where the initial decision of the Board to reject the demand letter goes far beyond "simple exposure," but does not reach the level of demonstrable bias during the Special Committee's investigation.  As such, London does not appreciably sway this court's analysis.

Thibaut, 39 N.C. App. 77; 250 S.E.2d 279 (1978); see also
Biondi, 820 A.2d at 1165.

A question about whether the special committee acted in
good faith is different from a question about the special
committee's independence, but the issues often relate to the
same facts.  See Swenson, 39 N.C. App. at 107, 250 S.E.2d at 298
(noting the "fundamental importance of [i]ndependent judgment by
directors as being crucial to the good faith question"); In re
Oracle Corp. Derivative Litig., 824 A.2d at 947.

As mentioned in this court's earlier discussion of the
Special Committee's independence and reasonable inquiry, Brooks
Pierce at the direction of the Special Committee conducted a
comprehensive investigation - interviewing thirteen officers and
employees as well as all twenty-five Individual Defendants,
searching over 87,000 emails, and reviewing thousands of pages
of documents, including board and committee minutes (Brooks
Pierce Report of Investigation (Doc. 26-2) at 7) - and produced
a thorough report on which the Special Committee relied in
making their decision (Skains Decl. (Doc. 26); Brooks Pierce
Report of Investigation (Doc. 26-2) at 7-8).  The depth and
breadth of this investigation demonstrates to this court that
the Special Committee approached this investigation with
sincerity as is notably reflected in the act of engaging

independent, unbiased counsel to conduct an extensive investigation.  As a result, this court finds that the Special Committee acted in good faith.  See Madvig, 546 F. Supp. 2d at 409.

In addition, neither the full board nor the Special Committee has made statements or taken actions that might demonstrate that the Special Committee was acting in bad faith. In this way, this case is dissimilar from Swenson v. Thibaut, a North Carolina Court of Appeals decision where the board unanimously voted to "vigorously resist the derivative action claims filed by plaintiffs" at the same meeting that it appointed the special committee.  Swenson, 39 N.C. App. at 106-07, 250 S.E.2d at 297-98; see James D. Cox & Donald E. Schwartz, The Business Judgment Rule in the Context of Termination of Derivative Suits by Independent Committees, 61 N.C. Law Review 541, 542 (1983) (characterizing Swenson).  Along with its vow to vigorously resist the derivative action, the board in Swenson had already sought to disqualify plaintiff's counsel at the time it appointed the special committee, indicating that any statements to the contrary were made in bad faith.  Swenson, 39 N.C. App. at 106-08, 250 S.E.2d at 298; see also Biondi, 820 A.2d at 1166 (finding that statements made by those inside and outside of the special committee caused the

court and stockholders to question the special committee's integrity and objectivity). Without these indicia of bad faith, there is no basis to believe that the thorough investigation conducted by Brooks Pierce on behalf of the Special Committee and the resulting comprehensive report on which the Special Committee relied were the products of anything other than good faith.

Many of Plaintiff's arguments concerning the Special Committee's lack of independence or the unreasonableness of its inquiry could be construed as an argument that the Special Committee was not acting in good faith. For instance, Plaintiff argues that the Special Committee had already pre-determined that the derivative proceeding was not in the best interest of the corporation, and as a result, the Special Committee could never perform a good faith investigation. (Pl.'s Mem. (Doc. 32) at 17-18.) Additionally, Plaintiff - using this court's words that the real issue is what the Special Committee did, not what Brooks Pierce did - argues the investigation was defective and conducted in bad faith because the Special Committee relied completely on Brooks Pierce's investigation and did not perform any investigation of its own. (Pl.'s Resp. & Supplemental Objections (Doc. 76) at 5-6.)

This court has already found these arguments unpersuasive and determined that the Special Committee acted independently and conducted a reasonable inquiry.[10] See infra Section III.A-B. For the reasons stated previously, this court finds that Plaintiff's arguments do not create a genuine dispute over whether the Special Committee acted in good faith.

Plaintiff also attempts to use the words of the Special Committee members to show that the Special Committee "was merely a pretext designed to exonerate the Individual Defendants." (Pl.'s Resp. & Supplemental Objections (Doc. 76) at 5, 9.) Plaintiff points to the depositions of the members of the Special Committee members in which (1) a Special Committee member stated that the investigation was "to show" that BB&T's officers and directors did not breach their fiduciary duties and (2) a Special Committee member stated that he concluded that Plaintiff's claims were "absurd" during the course of the investigation. (Id. at 5.) BB&T contends that these words were taken out of context. (BB&T's Reply (Doc. 77) at 3-5.)

This court finds that, even if this court interprets these statements in the light most favorable to Plaintiff, these two pieces of testimony do not overcome the evidence that indicates

_____

[10] As noted previously, the work of the Special Committee is reflected at least in the report to the Board. (See infra at 32.)

Special Committee was acting in good faith.  As the Delaware
Court of Chancery found in a similar case,

> The report of the Committee appears to be
> comprehensive and well documented and gives indication
> of a reasonable and thorough investigation of the
> plaintiff's allegations.  The broadside fired against
> it by the plaintiff based upon . . . the conclusions
> that he would have the Court draw by innuendo from the
> manner in which certain things were done is not
> sufficient to overcome the showing made by the
> Committee in my opinion.

Kaplan v. Wyatt, 484 A.2d 501, 519-20 (Del. Ch. 1984).  These
isolated statements, taken out of context, do not persuade this
court that the Special Committee was acting in bad faith while
making its determination to dismiss the derivative proceeding.

Ultimately, the prior vote taken by the full board of
directors is the central piece of evidence Plaintiff uses to
attempt to show that the Special Committee acted in bad faith.
This court has already concluded that the vote does not
interfere with the Special Committee member's independence.  In
the same way, the vote does not overcome the strong showing of
good faith made by BB&T.  After examining the work done by and
at the direction of the Special Committee, this court finds that
there is no genuine dispute as to whether the Special Committee
acted in good faith.

Because this court has found that there is no genuine
dispute as to whether the Special Committee acted independently,

based its determination on a reasonable inquiry, and conducted itself in good faith, this court is required to dismiss the suit as to BB&T, pursuant to N.C. Gen. Stat. § 55-7-44(a).[11]

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the Magistrate Judge's Recommendation (Doc. 35) is **ADOPTED,** that Nominal Defendant BB&T Corporation's Motion to Dismiss (Doc. 24) is **GRANTED,** and that this action is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Individual Defendants' Motion to Dismiss (Doc. 5) is **DENIED AS MOOT.**

A judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

This the 29th day of January, 2015.

_____
United States District Judge

---

[11] Plaintiff asked for leave by this court to replead if this court ruled in favor of BB&T's Motion to Dismiss. (Pl.'s Resp. & Supplemental Objections (Doc. 76) at 20.) However, further amendment would be futile in this instance because this court has concluded that there is no genuine dispute that BB&T complied with N.C. Gen. Stat. § 55-7-44. Due to the futility of further amendment, it is appropriate for this court to deny Plaintiff's request. See Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 409-10 (4th Cir. 2013).